UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**BOBBY J. KNIGHT,**

      **Plaintiff,**

**v.**                                              Case No:   6:14-cv-284-Orl-GJK

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OF DECISION

Bobby J. Knight (the "Claimant"), appeals to the District Court from a final decision of the Commissioner of Social Security (the "Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI").  Doc. No. 1.[1]  Claimant argues that the Administrative Law Judge (the "ALJ") erred at steps two and four of the sequential evaluation process.  Doc. No. 19 at 15-25.  Claimant requests that the matter be reversed for an award of benefits, or, in the alternative, remanded for further proceedings.  *Id*. at 25.  For the reasons set forth below, the Commissioner's final decision is **AFFIRMED**.

**I.**      **THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.**

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled.  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a).  In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

---

[1] Claimant originally alleged disability beginning on May 24, 2009, but amended his onset date to January 24, 2011. R. 24, 178-87, 270.

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## II. STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court must view the evidence as a whole, taking into account evidence favorable as well

as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (the court must scrutinize the entire record to determine reasonableness of factual findings); *Parker v. Bowen*, 793 F.2d 1177, 1180 (11th Cir. 1986) (the court also must consider evidence detracting from evidence on which the Commissioner relied). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III. ANALYSIS.

#### A. Step Two.

Claimant argues that the ALJ erred by finding the injury to his left leg (the "leg impairment") to be a non-severe impairment. Doc. No. 19 at 15-19. Whether Claimant's leg impairment is classified as severe or not does not result in reversible error, since the ALJ concluded that Claimant suffers from other severe impairments of mild right shoulder impingement syndrome, bipolar disorder, cannabis abuse, personality disorder, borderline intellectual functioning and history of polysubstance abuse. R. 27.[2] In *Farrington v. Astrue*, Case No. 3:09-cv-94-J-TEM, 2010 WL 1252684, at *4 (M.D. Fla. Mar. 29, 2010), the Court explained:

> Articulation of the specific impairments included in the Step 2 finding, while preferable, however, is not essential for an adequate finding under the Regulations. As the Eleventh Circuit has stated, "the ALJ could not have committed any error at step two because he found that [the claimant] had a severe impairment or combination of impairments and moved on to the next step in the evaluation, which is all that is required at step two." *Council v. Barnhart*, 127 F. App'x 473 (Table), No. 04-13128, at 4 (11th Cir. Dec. 28, 2004); *see also Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)

---

[2] The ALJ did consider whether Claimant's leg impairment is severe, providing a detailed and accurate analysis of the medical evidence pertaining to Claimant's leg impairment and concluding that Claimant's leg impairment is not severe.

>>(stating that the finding of any severe impairment is enough to satisfy the requirement of step two).

*Id.* Therefore, as long as an ALJ's decision demonstrates consideration of the combined effect of all of a claimant's impairments, and if the ALJ finds a severe impairment at step two, the ALJ satisfies the requirements of the regulations. *Id.* Consistent with the regulations and applicable law, the ALJ credited Claimant with other severe impairments at step two and proceeded to consider the remaining steps of the sequential evaluation process. R. 27-35. Thus, even if Claimant's leg impairment should have been classified as a severe impairment, the omission is only reversible error if the ALJ subsequently failed to fully account for any functional limitations arising therefrom. *Wright v. Comm'r of Soc. Sec.*, Case No. 6:12-cv-1640-Orl-31DAB, 2014 WL 982626, at *6 (M.D. Fla. Mar. 12, 2014). Here, the ALJ expressly considered Claimant's leg impairment at step four of the sequential evaluation process (R. 32-33), and, as discussed in more detail below, committed no error in determining that Claimant has the residual functional capacity ("RFC") to perform medium work despite his leg impairment. Accordingly, the ALJ committed no error at step two of the sequential evaluation process.

**B. Step Four.**

Claimant's remaining arguments challenge the ALJ's analysis and findings at step four of the sequential evaluation process. Doc. No. 19 at 18-25. At step four, the ALJ must determine the claimant's RFC and ability to do past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1527(d-e). The RFC is "an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis" before expressing the claimant's RFC in terms of

exertional levels of work. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996).[3] The ALJ must consider all of the claimant's medically determinable impairments, even those not designated as severe, when determining the claimant's RFC. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2).

### 1. Leg Impairment.

Claimant argues that the ALJ erred by not conducting a function-by-function analysis with respect to his leg impairment, and by not including any standing or walking limitations as a result of his leg impairment in her RFC determination. Doc. No. 19 at 18-19, 21-25. For the reasons that follow, the Court finds Claimant's arguments unavailing.

Claimant suffered an injury to his left leg sometime between 1996 and 2000, which required surgery. *See* R. 403, 416, 439, 445.[4] Though the record contains treatment notes dating back to 2002 (*See, e.g.*, R. 290-91, 295-99, 312-16, 406-10), the first complaint of left leg pain did not occur until January 24, 2011 (R. 403). On that day, Claimant presented at Brevard Health Alliance ("BHA") complaining of pain in his left leg, among other issues, and walking with a cane. R. 403. On April 25, 2011, Dr. Homi Cooper performed a physical examination of Claimant, which yielded relatively unremarkable results with respect to Claimant's lower extremities. R. 416-19.[5] On May 23, 2011, Dr. R. Cooper performed a one-time examination of Claimant's lower extremities, which yielded relatively unremarkable results with the exception of diminished

---

[3] The Eleventh Circuit has stated "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration. Even though the rulings are not binding on us, we should nonetheless accord the rulings great respect and deference[.]" *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citations omitted).

[4] Although the record contains conflicting evidence concerning the cause and exact date of Claimant's leg impairment, the record establishes that Claimant suffered an injury to his left leg sometime between 1996 and 2000, which required surgery. *See* R. 403, 416, 439, 445.

[5] On May 12, 2011, Dr. H. Cooper performed a follow-up consultation focusing on Claimant's shoulder impairment, which is not at issue in this matter. R. 440.

strength in Claimant's left leg.  R. 439.  That same day, Dr. R. Cooper prescribed Claimant a cane for his leg pain.  R. 454.  At the hearing, Claimant testified that he is unable to work, in part, due to his leg impairment, explaining that he must use a cane and can stand and/or walk for no more than 10 to 15 minutes at a time.  R. 59, 73.

At step four of the sequential evaluation process, the ALJ determined that Claimant has the RFC to perform "medium work . . . except [he] is able to perform simple, routine, repetitive tasks and engage in brief, superficial interactions with others."  R. 31.[6]  In reaching this RFC, the ALJ expressly considered Claimant's leg impairment, stating:

> The [ALJ] has also reviewed the medical evidence of record in terms of the claimant's use of a cane.  As previously noted, the claimant had appeared at the Palm Bay Community Hospital in August of 2010 for a complaint of upper abdomen and chest pain.  Testing had revealed the presence of gallstones and elevated liver functions.  The claimant had no leg complaints and no allegation that he used a cane to ambulate.  None were noted by his physicians.  He underwent surgery for the gallstones and follow up at the local clinic in September and October 2010.  Again, no allegation of leg pain or his need for a cane was noted.  It was not until an appearance at the clinic of January 24, 2011, that he alleged leg pain due to a prior surgery and appeared walking with a cane.  However, no clinical objective findings were noted to support the use of a cane.  When examined by Dr. Homi S. Cooper on April 25, 2011, the claimant stated that he walks with the assistance of a cane.  However, an examination produced no physical limitations.  The claimant had good posture.  He was able to walk on his heels and his toes.  Side-stepping, toe-tapping and balancing on each foot were done relatively well.  He had a normal gait and stance.  Tandem gait was normal.  No disequilibrium was noted.  The claimant had full strength in the lower extremities and no muscle wasting.  It is important to note, Dr. [H.] Cooper did not specifically state the claimant ambulated with the assistance of a cane.  The claimant was also examined by Dr. Robert A. Cooper on May 23, 2011, who made no reference to the claimant's use of a cane.  He also

---

[6] Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 404.1567(c).  "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds."  SSR 83-10, 1983 WL 31251, at *6 (1983).

> indicated the claimant had full extension of the hip and full range of motion of the knee. He indicated an x-ray revealed calcification of the left femoral shaft, but minimal arthritic hip changes. No further treatment was recommended other than strengthening of the muscles of his leg. It appears on May 23, 2011, Dr. Robert Cooper had prescribed the claimant a cane. The [ALJ] also noted the claimant testified he had been able to work part-time performing janitorial chores in a local church. Therefore, based upon the negative findings of Dr. Homi S. Cooper and Dr. Robert Cooper, the fact the claimant had had no medical treatment, and the claimant's self-report of part-time employment, the [ALJ] finds the claimant's allegation that he requires a cane for all activities, is not support by the medical evidence of record.

R. 32-33 (citations omitted). The foregoing excerpt demonstrates that the ALJ considered the relevant medical, opinion, and testimonial evidence concerning Claimant's leg impairment and the effect thereof on his ability to function, which ultimately led to the ALJ finding that Claimant can perform medium work, with additional nonexertional limitations caused by Claimant's mental impairments. *See* R. 31-34. As a result, the Court finds that the ALJ completed an adequate function-by-function analysis with respect to any limitations caused by Claimant's leg impairment, thus complying with the dictates of SSR 96-8p.

Claimant also argues that the medical record and his testimony support a more restrictive RFC in regard to walking and standing. Doc. No. 19 at 18-19, 21-25. Claimant focuses on Dr. R. Cooper's finding of diminished strength in the left leg and prescription for a cane. *Id*. at 21, 23-25. Claimant further argues that the ALJ erred by not weighing Dr. R. Cooper's opinions, which support a reduced ability to stand and walk. *Id*. at 23-25. The Court disagrees. Dr. R. Cooper's examination report is a diagnostic assessment of Claimant's leg impairment, and does not contain any opinions concerning limitations in Claimant's ability to function. R. 439. Given the nature of Dr. R. Cooper's examination report, the ALJ did not commit reversible error by not assigning any weight thereto. *See Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178-79 (11th

Cir. 2011) (discussing what constitutes a medical opinion that must be weighed).[7] The ALJ, though, did consider Dr. R. Cooper's examination report along with the other medical evidence concerning Claimant's leg impairment, none of which contained any standing or walking limitations. R. 31-34, 403-05, 416-19, 439-40.

The only evidence of walking and standing limitations is Claimant's testimony and Dr. R. Cooper's prescription for a cane. R. 59, 73, 454. The ALJ, though, found Claimant's testimony not credible (R. 32-34), and Claimant does not challenge that finding on appeal (*See* Doc. No. 19). With respect to Dr. R. Cooper's prescription for a cane, the ALJ expressly considered Claimant's use and need for a cane against the backdrop of relatively unremarkable examination findings and Claimant's testimony, concluding that the medical record and Claimant's activities of daily living do not support the need for a cane or otherwise limit Claimant's ability to stand and walk. R. 32-34. For these reasons, the Court finds that the ALJ properly considered Claimant's leg impairment, and that her finding that he can perform medium work is supported by substantial evidence.

### 2. Mental Impairments.

Claimant argues that the ALJ erred by not conducting a function-by-function analysis with respect to his mental impairments, and by not accounting for all of the limitations identified by one-time consultative examiners Drs. Kaplan and Nassar in her RFC determination. Doc. No. 19 at 19-21. For the reasons that follow, the Court finds Claimant's arguments unavailing.

---

[7] Even if the ALJ erred by not weighing Dr. R. Cooper's examination report, the error is harmless since there is nothing in the report that manifestly contradicts the ALJ's RFC determination. *See Wright v. Barnhart*, 153 F. App'x 678, 684 (11th Cir. 2005) ("Although the ALJ did not explicitly state what weight he afforded the opinions of [several physicians], none of their opinions directly contradicted the ALJ's findings, and, therefore, any error regarding their opinions is harmless.").

The record reveals that Claimant intermittently sought treatment for his mental impairments. On February 13, 2007, Claimant presented at Lakeside Behavioral Care. R. 295. Claimant reported that he had been diagnosed with bipolar disorder four (4) years prior and requested that he placed back on his medications. *Id*. The attending physician examined Claimant, diagnosed him with bipolar disorder without psychotic features and a history of polysubstance abuse, and started him on Seroquel, Lithium carbonate, and group therapy. R. 298-99. On March 13, 2007, Claimant presented at Lakeside Behavioral Care for a follow-up, and was given a prescription to refill his medications. R. 307-08. On October 13, 2010, Claimant presented at BHA complaining of "mental disturbance," among other issues. R. 357-58. A mental status examination was performed, revealing the following: intact insight and judgment; orientation to time, place, and person; intact memory; no depression, anxiety, or distress; depressed and labile mood; and rapid but logical speech. R. 358. Claimant was referred to a psychiatrist, but a subsequent treatment note from January 24, 2011, indicated that Claimant did not follow through with the referral due to financial hardship. R. 358, 403.

Due to the lack of mental health treatment records, Claimant underwent two (2) mental health consultative examinations. On January 20, 2011, Dr. Kaplan performed a mental health examination of Claimant, and diagnosed him with bipolar disorder. R. 372-74. Dr. Kaplan opined that Claimant is "likely to experience mild impairment understanding 1 and 2 step tasks but marked impairment understanding complex tasks, adapting, and getting along in social settings." R. 374. On April 14, 2011, Dr. Nassar performed a mental health examination of Claimant, and diagnosed him with bipolar disorder, cannabis abuse, personality disorder NOS, and borderline intellectual functioning. R. 445-49. Dr. Nassar opined that Claimant "will likely do best in some type of job that involves tasks that are relatively simple, repetitious, and overlearned

in nature," and that he "may want to pursue some type of job that does not involve a great deal of social interaction[.]" R. 449. Thus, both opinions address Claimant's limited ability to understand tasks and interact with others socially, but Dr. Kaplan's opinion is phrased in terms of mild and marked limitations, while Dr. Nassar's opinion addresses the best type of job for Claimant and that Claimant may wish to pursue employment that requires limited social interaction.

As previously mentioned, the ALJ determined that Claimant has the RFC to perform "medium work . . . except [he] is able to perform simple, routine, repetitive tasks and engage in brief, superficial interactions with others." R. 31. In reaching this RFC, the ALJ conducted a thorough analysis of the medical, opinion, and testimonial evidence pertaining to Claimant's mental impairments. R. 33-34. In doing so, the ALJ assigned Dr. Kaplan's opinion "little weight" because Dr. Kaplan was a one-time examiner and his findings were not supported by the limited medical record documenting Claimant's mental impairments. R. 33-34. On the other hand, the ALJ assigned Dr. Nassar's opinion "great weight" because it was "well supported by his clinical objective findings and laboratory diagnostic techniques." R. 33. Upon review of the ALJ's analysis of Claimant's mental impairments, the Court finds that the ALJ completed an adequate function-by-function analysis with respect to the limitations caused by Claimant's mental impairments, thus complying with the dictates of SSR 96-8p.

Claimant also argues that in making her RFC finding the ALJ failed to account for all of the limitations identified by Dr. Nassar, and erred by assigning Dr. Kaplan's opinion little weight. Doc. No. 19 at 19-21. As a result of these alleged errors, Claimant maintains that the ALJ's RFC determination is not supported by substantial evidence. *Id*. The Court disagrees. First, the ALJ properly accounted for the limitations opined to by Dr. Nassar in her RFC determination. The limitations Claimant refers to are located in a section of Dr. Nassar's report entitled "Intelligence

Testing," which details the raw findings from the Wechsler Adult Intelligence Scales test, as well as a section entitled "Possible Impediments to Employment," which identify eight (8) possible difficulties Claimant may encounter in the work force. *Id*. at 19-20 (citing R. 447-48). These sections did not contain Dr. Nassar's ultimate opinions concerning Claimant's functional limitations.[8] Instead, Dr. Nassar's ultimate opinions concerning claimant's functional limitations appear in the final section of his report entitled "Recommendations." R. 449. The opinions in this section are the opinions the ALJ assigned great weight and incorporated into her RFC determination. *Compare* R. 31, 33 *with* R. 449.[9] Thus, the Court finds that the ALJ's RFC determination properly accounted for the limitations opined by Dr. Nassar.

Second, the Court finds that the ALJ did not err by assigning Dr. Kaplan's opinion little weight. It is axiomatic that the ALJ must consider each medical opinion and state with particularity the weight assigned to the opinion and the reasons therefor. *Winschel*, 631 F.3d at 1178-79. The opinion of an examining physician, such as Dr. Kaplan, is generally entitled to more weight than the opinion of a non-examining physician. *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985). While "the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician, the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion" and the ALJ articulates his or her reasoning for rejecting the opinion(s). *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (internal quotations omitted).

---

[8] Even if the areas of possible difficulty were part of Dr. Nassar's ultimate opinion concerning Claimant's functional limitations, the ALJ was free to discount the findings given their equivocal nature. *See Mason v. Comm'r of Soc. Sec.*, 430 F. App'x 830, 832 (11th Cir. 2011) (noting that when a "physician expresses uncertainty as to his own medical findings, the ALJ has no obligation to defer to his opinion") (citing *Edwards v. Sullivan*, 937 F.2d 580, 584 (11th Cir. 1991)); *see also Anderson v. Comm'r of Soc. Sec.*, 427 F. App'x 761, 763 (11th Cir. 2011) (finding that the ALJ properly discounted the report of a physician whose "report was inconsistent and equivocal").

[9] Claimant does not challenge the weight the assigned to Dr. Nassar's opinion. *See* Doc. No. 19.

- 11 -

Claimant maintains that the ALJ did not articulate adequate reasons for assigning Dr. Kaplan's opinion little weight. Doc. No. 19 at 21. The Court disagrees. The ALJ was presented with somewhat conflicting opinions from two (2) one-time examining physicians (Drs. Kaplan and Nassar) concerning Claimant's functional limitations. *Compare* R. 374 *with* R. 449. Resolving such conflicts is for the ALJ to decide so long as he or she does so based on substantial evidence. *See Wolfe v. Chater*, 86 F.3d 1072, 1079 (11th Cir. 1996) ("The ALJ's task is to examine the evidence and resolve conflicting reports"). Here, the ALJ resolved the conflict by articulating two (2) reasons for giving Dr. Kaplan's opinion little weight. First, the ALJ assigned Dr. Kaplan's opinion little weight because he only examined Claimant on one occasion. R. 33. Second, the ALJ assigned Dr. Kaplan's opinion little weight due to the lack of mental health treatment for the period preceding Dr. Kaplan's examination and the lack of prescription for psychotropic medications. R. 33-34. Bearing in mind that Dr. Kaplan's opinion is not entitled to any special weight, *see Wainwright v. Comm'r of Soc. Sec. Admin.*, 2007 WL 708971, at *2 (11th Cir. Mar. 9, 2007) (explaining that the opinion of a one-time examining physician is not entitled to "any special weight"), the Court finds that on this record the reasons stated by the ALJ for assigning Dr. Kaplan's opinion little weight are supported by substantial evidence. Furthermore, the ALJ's overall RFC determination is supported by substantial evidence, which includes the medical records pertaining to his mental impairments, the lack of treatment,[10] Claimant's reported daily

---

[10] Claimant maintains that he did not seek mental health treatment due to financial hardship, and that the ALJ ignored his testimony about financial hardship. Doc. No. 19 at 21. An ALJ may not draw an adverse inference from a claimant's lack of medical treatment, especially where the lack of treatment is due to poverty, without first considering the claimant's explanation for his or her failure to seek treatment. *E.g.*, *Brown v. Comm'r of Soc. Sec.*, 425 F. App'x 813, 817 (11th Cir. 2011) (citing SSR 96-7p, 1996 WL 374186 at *7 (July 2, 1996)). During the hearing, the ALJ asked several questions exploring Claimant's claim of financial hardship. The ALJ asked Claimant about his receipt of unemployment benefits. R. 64-69. Claimant testified that his unemployment benefits ceased a year and half before the August 12, 2012 hearing, which would place the time of cessation in February of 2011. R. 65. The ALJ also asked Claimant whether he has engaged in any part-time work since the alleged disability onset date. R. 76. Claimant responded in the affirmative, testifying that he performs janitorial work at his church approximately three (3) days a week, and, in return the church provides him with an $800.00 "donation" each month. R. 76-78. In her

activities, and Dr. Nassar's opinion.  R. 33-34.  For these reasons, the Court finds that the ALJ properly considered Claimant's mental impairment, and that her finding that he can perform "simple, routine, repetitive tasks and engage in brief, superficial interactions with others" is supported by substantial evidence.

**IV.     CONCLUSION.**

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **AFFIRMED**; and

2. The Clerk is directed to enter judgment in favor of the Commissioner and to close the case.

**DONE** and **ORDERED** in Orlando, Florida on March 30, 2015.

GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Valencia Jarvis
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc
500 East Broward Blvd
Suite 1000, 10th Floor
Ft Lauderdale, FL 33394

---

decision, the ALJ notes Claimant's part-time work and receipt of unemployment benefits.  R. 33.  Specifically, the ALJ found that Claimant's unemployment benefits "would provide funds for some, even if minimal, treatment."  *Id*.  Thus, the ALJ expressly considered Claimant's claim of financial hardship and reasonably found it unavailing to the extent that it would totally preclude him from obtaining some form of mental health treatment.